IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MELISSA SILONG, et al.,<br><br>        Plaintiffs,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant.<br>_____ / | CASE NO. CV F 06-0474 LJO DLB<br><br>**DECISION ON PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S EXPERT MICHELE GRIMM, Ph.D.**<br>(Doc. 48) |

**INTRODUCTION**

In this medical malpractice action addressing complications of the birth of minor plaintiff Paige Silong ("Paige"), Plaintiffs Gina Silong ("Ms. Silong") and Lt. Col. Richard Silong (collectively "Plaintiffs") seek to exclude the testimony of Defendant United States of America's ("Government's") expert witness Michele Grimm, Ph.D. ("Dr. Grimm"). This Court considered Plaintiffs' motion on the record, pursuant to stipulation by the parties. For the reasons discussed below, this Court finds Dr. Grimm's expert methods, techniques, and opinions are reliable and admissible. Accordingly, Plaintiffs' motion to exclude the expert testimony of Dr. Grimm is DENIED.

**BACKGROUND**

On October 20, 2001 at 4:20 a.m., Ms. Silong arrived at Lemoore Naval Hospital's ("hospital's") maternal infant unit in active labor. The delivery team encountered shoulder dystocia that physically

impeded Paige's normal descent through the birth canal. Shoulder dystocia results when the baby's shoulder becomes impacted or caught within the birthing canal after the baby's head is delivered to prevent full delivery of the baby. Dane Winkelman, M.D. ("Dr. Winkelman"), applied traction, pulling on Paige's head, to facilitate delivery, and Paige was delivered at 5:28 a.m. Examination revealed weakness to Paige's left arm, consistent with injury to her brachial plexus, a network of nerves in the neck and armpit. Injury affecting nerves in the spine at C5-C6 is referred to as Erb's palsy. Paige's brachial plexus condition may not resolve.

### Plaintiffs' Claims

Plaintiffs proceed on their original complaint for themselves and Paige to pursue medical malpractice claims against the Government, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Plaintiffs allege that Dr. Winkelmen provided substandard care by applying excessive traction after shoulder dystocia, which caused "Paige Silong to sustain permanent injury to her nerves, and the soft tissues of her left upper extremity, neck and shoulder." Plaintiffs contend that "brachial plexus injuries are caused by excessive traction applied by the physician (i.e. pulling too hard) when shoulder dystocia is encountered."

### Government's Defense

The Government argues that the brachial plexus injuries were caused by the natural forces of labor. In support of its defense, the Government relies on Dr. Grimm, whose expert opinion is based on the "maternal labor force theory."[1] Dr. Grimm has been retained to offer both affirmative causation and rebuttal opinions. In this motion, Plaintiffs seek to exclude Dr. Grimm's opinions and testimony.

### DISCUSSION

### Standards of Reviews

Federal Rule of Evidence 702 ("Rule 702"), which governs the admissibility of expert witness testimony, provides:

---

[1] Both parties use several terms interchangeably to describe Dr. Grimm's theory, such as the "maternal endogenous force theory," the "maternal labor force theory," the "expulsive maternal labor force theory," the "maternal force theory," *et al.* For purposes of clarity, the Court will use the term "maternal labor force theory."

2

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert....may testify thereto...if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92, (1993). The Court's role in weighing expert opinions against these standards is that of a "gatekeeper" to "make certain that the expert...employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under *Daubert* and its progeny, an expert opinion is reliable if its based on scientific knowledge. "The adjective 'scientific' implies a grounding in the methods or procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. 579, 589. A non-exhaustive list of factors to determine reliability includes: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory is generally accepted in the relevant scientific community. *Metabolife Int'l v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001) (citing *Daubert,* 509 U.S. 579, 593-94). To determine reliability, a court should also consider the objectivity and independence of the research. *Id.*

The expert opinion must also be relevant or "fit" the facts of the case. *Daubert*, 509 U.S.579, 591. The standard for "fit" is higher than bare relevance. *In re Paoli R.R. Yard PCB Litig.*, 35 3d 717, 745 (3d Cir. 1994), *cert denied sub nom.*, *General Electric Co. v. Ingram*, 513 U.S. 1190 (1995). The scientific knowledge must be connected to the question at issue and the trial court "must ensure that the proposed expert testimony is relevant to the task at hand...i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert* II").

## **MADYMO Model**

Dr. Grimm is a biomedical engineer who researches injury-producing mechanisms on humans, including the mechanics of the birthing process and brachial plexus nerves. In her research "that

specifically analyzes the forces and impacts that a fetus encounters during the birth process, in particular the forces involved on the brachial plexus nerve when shoulder dystocia occurs," Dr. Grimm uses a computer model, referred to by its acronym MADYMO. MADYMO is software that was developed "over twenty-five years ago to enable biomedical and biomechanical engineers to understand injury response and the mechanics of injury."[2]

The MADYMO model developed by Dr. Grimm starts with a model of a crash test dummy the size of a 9-month-old infant. The model size was reduced to match the size of a 90th percentile newborn, with all remaining segments of the body changed proportionally. The relationship between the body segment geometrics and individual masses was based on human anthropometry tables. The neck of the model infant, taken from a child goat, was developed based on knowledge of human cervical anatomy. The stiffness of the neck was determined based on biomedical engineering work conducted at the Medical College of Wisconsin, published in an esteemed medical journal, and adopted by other reputable researchers and institutions. Dr. Grimm uses a rabbit nerve to represent the brachial plexus. Dr. Grimm selected that nerve based on work conducted under the supervision of Dr. Savio Woo, one of the leading soft tissue biomechanists in the world. Dr. Grimm uses MADYMO, along with relevant literature, to demonstrate that forces exerted by uterine contractions can be sufficient to cause injury when the infant's shoulder becomes impacted against the mother's pubic bone during delivery.

### **Reliability**[3]

In this motion, Plaintiffs make unsupported and unsubstantiated assertions about Dr. Grimm and her scientific methods, research and opinions. Plaintiffs attack the reliability of Ms. Grimm's maternal labor forces theory by alleging it: (1) has not been subjected to engineering peer review, (2) is not generally accepted within the relevant scientific community, (3) does not test the error rate of the model, (4) uses animal parts that do not fairly and accurately represent the infant human neck, shoulder, and brachial plexus nerves, (5) ignores resistant forces in the birth canal that affect the amount of net force

---

[2] Unless otherwise noted, the information and quotations in this section are taken from the deposition of Dr. Grimm, Exhibit 5 to the Government's opposition to this motion.

[3] Because Dr. Grimms' research is based on injury to the brachial plexus and shoulder dysplocia, an issue directly related to the cause of Paige's injuries, Plaintiffs' do not raise the issue of relevance in this motion.

by the infant, and (6) does not measure the amount of force that causes brachial plexus injury.

As set forth above, to determine the reliability of an expert opinion, a court will generally consider whether it has been tested, subjected to peer review and/or publication, the potential rate of error and whether it is generally accepted in the relevant scientific community. Peer review is a very significant factor to consider, though the requirement may also be met by

> precisely explaining how the experts went about reaching their conclusions and pointing to some objective source–a learned treatise,...a published article in a reputable scientific journal or the like–to show that they have followed a scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.

*Metabolife*, 246 F.3d, 832, 841 (citing *United States v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994)).

The evidence provided by the Government shows that Dr. Grimm's expert opinion is reliable for purposes of Rule 702 and *Daubert*. Based on her tests and techniques with MADYMO, Dr. Grimm has published three peer-reviewed articles on the maternal labor force theory as it relates to shoulder dystocia and brachial plexus injury in the American Journal of Obstetrics and Gynecology. Further, Dr. Grimm's findings have been referenced in a textbook in the field of obstetrics, *Williams on Obstetrics*. Dr. Grimm's findings, methodologies and opinions have also been cited in publications issued by the American College of Obstetrics and Gynecology. Moreover, Dr. Grimm teaches advanced university courses on the subject.

The evidence further shows that Dr. Grimm's work has gained acceptance in the medical and biomechanical communities. She has received multiple awards for research excellence based on her research on fetal brachial plexus strain during shoulder dystocia. Dr. Grimm has been asked to present her findings on this issue at several international biomedical and biomechanical conferences. Additionally, Dr. Grimm's maternal labor force theory is supported by other existing literature.[4] Finally, Dr. Grimm presents evidence that her scientific techniques were based on accepted scientific methodologies and learned treatises.

Plaintiffs' arguments affect the weight of Dr. Grimm's opinions, not admissibility. Plaintiffs may fully examine the issues raised in this motion on cross-examination or by the presentation of

---

[4] The Government attaches no less than eight articles on the maternal labor force theory published in medical journals and books as exhibits to this motion.

competing evidence. See Fed. R. Civ. P. 703; *Daubert*, 509 U.S. 571, 595. In this motion, as discussed above, the Government has met its burden of proving that Dr. Grimm's expert opinion meets the requirements of Rule 702 and *Daubert* and is therefore admissible.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion to exclude the testimony of Michele Grimm, Ph.D. is DENIED.

IT IS SO ORDERED.

**Dated:   August 31, 2007**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE