1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    GINA MELISSA SILONG, et al.,            CASE NO. CV F 06-0474 LJO DLB

10              Plaintiffs,                   **DECISION ON GOVERNMENT'S
                                              SUMMARY ADJUDICATION MOTION ON**
11        vs.                                 **DAMAGES** _____
                                              (Docs. 51, 68.)
12   UNITED STATES OF AMERICA,

13              Defendant.
     _____/

14

15                          __INTRODUCTION__

16        In this medical malpractice action addressing complications of the birth of minor plaintiff Paige

17   Silong ("Paige"), defendant United States of America ("Government") seeks summary adjudication on

18   all damage claims, except Paige's alleged general damages and future medical expenses after age 23.[1]

19   The Government seeks to preclude damage claims of Paige's parents, Air Force Lieutenant Colonel

20   Richard Silong ("Lt. Col. Silong") and Gina Melissa Silong ("Ms. Silong"). This Court considered the

21   Government's summary adjudication motion on the record,[2] pursuant to Local Rule 78-230(h). For the

22   reasons discussed below, this Court GRANTS in part and DENIES in part summary adjudication for the

23   Government.

24   _____

25        [1]    As will be discussed in greater detail below, the Government contends that Paige's future medical expenses
     will be covered by insurance until age 23, if she attends college as expected.

26        [2]    This Court carefully reviewed and considered all arguments, points and authorities, declarations,
     depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.
27   Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did
     not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence it
28   deemed admissible, material and appropriate for summary adjudication.

                                    1

# BACKGROUND

## Paige's Birth

On March 5, 2001, Ms. Silong was eight weeks pregnant with Paige and began prenatal care at Lemoore Naval Hospital ("hospital").  On October 20, 2001 at 4:20 a.m., Ms. Silong arrived at the hospital's maternal infant unit in active labor.  The delivery team encountered what the Government characterizes as an unpredicted shoulder dystocia that physically impeded Paige's normal descent through the birth canal.  Shoulder dystocia results when the baby's shoulder becomes impacted or caught within the birthing canal after the baby's head is delivered to prevent full delivery of the baby.  Dane Winkelman, M.D. ("Dr. Winkelman"), applied traction, pulling on Paige's head, to facilitate delivery, and Paige was delivered at 5:28 a.m.  Lt. Col. Silong and Ms. Silong contend that excessive traction after shoulder dystocia is substandard care.  Examination revealed weakness to Paige's left arm, consistent with injury to her brachial plexus, a network of nerves in the neck and armpit.

On October 21, 2001, Ms. Silong was discharged with Paige.  Four weeks later, Lt. Col. Silong and Ms. Silong learned that Paige's brachial plexus condition may not resolve.

## Improved Condition

Paige received therapy and showed muscle movement in her shoulder and hands by November 21, 2001.  During 2002 and 2003, neurosurgical procedures were performed to Paige's brachial plexus nerves, including reconstructive and release procedures and a left posterior shoulder capsulodesis.  Paige's left arm use and function improved, and she continued to receive therapy.

The Government describes Paige as a "vivacious five-year old" and points to deposition testimony of her school teacher that Paige is happy, easygoing, well-adjusted, typical, bright, articulate, loving and one of the better students.  Paige's teacher notes that she has observed Paige jump rope, hang upside down from monkey bars, bounce a ball, hit a ball with a bat, run, play soccer, swing and climb a jungle gym.

## Plaintiffs' Claims

Lt. Col. Silong and Ms. Silong proceed on their original complaint for themselves and Paige to pursue medical malpractice claims against the Government, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.  Lt. Col. Silong and Ms. Silong allege that due to "failure to

properly manage the pregnancy, labor and delivery, Paige Silong suffered a traumatic delivery which caused permanent and irreparable damage to her.  Specifically, Paige Silong sustained permanent injury to her nerves, and the soft tissues of her left upper extremity, neck and shoulder."  Lt. Col. Silong and Ms. Silong further allege that "Paige remains in a severely handicapped disabled condition that limits her daily active living."

The complaint alleges Lt. Col. Silong and Ms. Silong's damages for past and future medical expenses for Paige and loss of parent-child consortium.  For Paige, Lt. Col. Silong and Ms. Silong seek damages for:

1.    Past and future mental anguish;

2.    Past and future physical pain and suffering;

3.    Past and future physical disfigurement;

4.    Past and future permanent physical impairment;

5.    Loss of earnings and earning capacity;

6.    Past and future medical expenses;

7.    Loss of enjoyment of life; and

8.    Loss of parent-child consortium.

The Government seeks to preclude damages claims of Lt. Col. Silong, Ms. Silong and Paige (collectively "plaintiffs") (except Paige's alleged general damages and future medical expenses after age 23) on grounds that they are barred as a matter of law and by plaintiffs' inadequate discovery disclosures.

**DISCUSSION**

**Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof."  Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.  F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."

1  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin*

2  *Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

3       On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to

4  any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c);

5  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress*

6  *& Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464,

7  467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th

8  Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and

9  all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of

10 the opposing party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986);

11 *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient

12 disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

13 a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

14       To carry its burden of production on summary judgment/adjudication, a moving party "must

15 either produce evidence negating an essential element of the nonmoving party's claim or defense or

16 show that the nonmoving party does not have enough evidence of an essential element to carry its

17 ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

18 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d

19 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party

20 must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102;

21 *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts

22 are material.  Only disputes over facts that might affect the outcome of the suit under the governing law

23 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

24       "If a moving party fails to carry its initial burden of production, the nonmoving party has no

25 obligation to produce anything, even if the nonmoving party would have the ultimate burden of

26 persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

27 "If, however, a moving party carries its burden of production, the nonmoving party must produce

28 evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

4

at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

As discussed below, this Court grants the Government's requested relief on plaintiffs' damages claims, except as to Paige's future earning capacity and a complete offset as to future medical expenses incurred up to age 23.

### Governing Law

A district court applies the substantive law of the state where the negligent act or omission occurred in an FTCA action. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585 (1962). "The extent of the government's [FTCA] liability is a matter of federal law (28 U.S.C. §§ 1346(b), 2674),

1    albeit determined according to state standards." *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir.

2    1987).  The Government points out that California substantive law applies to plaintiffs' damages claims

3    given that "all activities," including Paige's prenatal care and birth, occurred in California but that

4    federal law governs procedural matters.

5                        **Failure To Disclose Damages Computations**

6            The Government contends that plaintiffs' original and supplemental F.R.Civ.P. 26(a)(1) initial

7    disclosures fail to include computations of alleged damages for loss of consortium, emotional distress

8    and past medical expenses to bar such damages claims.  As such, the Government argues that damages

9    claims are limited to Paige's general damages and future medical expenses up to age 23.

10           F.R.Civ.P. 26(a)(1)(C) requires a party, "without awaiting a discovery request," to disclose "a

11   computation of any category of damages claimed by the disclosing party, making available for inspection

12   and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected

13   from disclosure, on which such computation is based, including materials bearing on the nature and

14   extent of injuries suffered."   Pursuant to F.R.Civ.P. 37(c)(1), a "party that without substantial

15   justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is

16   harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so

17   disclosed." F.R.Civ.P. 37(c)(1) "gives teeth . . . by forbidding the use at trial of any information required

18   to be disclosed by Rule 26(a) that is not properly disclosed" and provides a "self-executing," "automatic"

19   sanction as "a strong inducement for disclosure of material."  *Yeti By Molly Ltd. v. Deckers Outdoor

20   Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting, in part, F.R.Civ.P. 37 Advisory Comm. Notes

21   (1993)).

22           The Ninth Circuit Court of Appeals gives "particularly wide latitude to the district court's

23   discretion to issue sanctions under Rule 37(c)(1)."  *Yeti*, 259 F.3d at 1106.  The Ninth Circuit has

24   explained that "even absent a showing in the record of bad faith or willfulness, exclusion is an

25   appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."  *Yeti*, 259

26   F.3d at 1106.  "The sanction of exclusion is thus automatic and mandatory unless the party to be

27   sanctioned can show that its violation of Rule 26(a) was either justified or harmless."  *Finley v.

28   Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).  "Implicit in Rule 37(c)(1) is that the burden is

                                                    6

1  on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107.  Summary judgement may

2  be imposed based on absence of evidence excluded for failure to comply with F.R.Civ.P. 26(a).  *See*

3  *Wong v. Regents of the Univ. of California*, 379 F.3d 1097, 1103 (9th Cir. 2004).

4      The Government argues that plaintiffs' requisite F.R.Civ.P. 26(a)(1)(C) damages computations

5  were limited to a $250,000 claim for Paige's general damages and reference to expert reports for future

6  medical expenses and lost earnings.  The Government faults plaintiffs' delay to July 6, 2007, four days

7  prior to the discovery cutoff, to make such limited disclosures and absence of computation of damages

8  for loss of consortium, emotional distress and past medical expenses.  The Government continues that

9  plaintiffs fail to demonstrate substantial justification for failure to disclose damages computations in that

10  their attorneys specialize in FTCA cases throughout the United States.  Based on plaintiffs' initial

11  disclosures, the Government seeks to preclude Lt. Col. Silong and Ms. Silong's alleged damages (past

12  and future medical expenses and loss of consortium) and Paige's alleged damages for past medical

13  expenses and lost earning capacity.

14      Plaintiffs do not oppose meaningfully the Government's absence of damages computation

15  arguments as to Lt. Col. Silong and Ms. Silong's loss of consortium and emotional distress claims and

16  Paige's past medical expenses.

17      Based on the absence of plaintiffs' sufficient F.R.Civ.P. 26(a)(1)(C) damages computations and

18  for more specific reasons discussed below, this Court agrees with the Government to bar Lt. Col. Silong

19  and Ms. Silong's loss of consortium and emotional distress damages claims and claims for Paige's past

20  medical expenses and plaintiffs' out-of-pocket expenses for her care.

21  **Loss Of Parent-Child Consortium**

22      The Government argues that California law "disallows" claims for loss of parent-child

23  consortium.  The Government points to the California Supreme Court pronouncement in *Baxter v.*

24  *Superior Court,* 19 Cal.3d 461, 463, 466, 138 Cal.Rptr. 315 (1977):

25      In California, however, the parent's cause of action has not expanded beyond the ancient
    right to recover for loss of earnings and services of economic value. For the policy

26      reasons stated in *Borer*, in particular the intangible nature of the injury and the danger
    of multiplication of claims and liability, we decline to enlarge the parent's cause of action

27      to permit recovery for the loss of affection and society.

28      . . .

7

1    . . .We therefore conclude that a parent has no cause of action in negligence to recover
     damages for loss of filial consortium.

2

3    In *Foy v. Greenblott,* 141 Cal.App.3d 1, 7, 190 Cal.Rptr. 84 (1983), the California Court of Appeals

4    explained:

5         Losses of parental or filial consortium are not actionable. "[T]he inadequacy of monetary
          damages to make whole the loss suffered, considered in light of the social cost of paying
6         such awards, constitutes a strong reason for refusing to recognize the asserted claim."
          (*Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441, 447 [138 Cal.Rptr. 302, 563 P.2d
7         858]; *also see Baxter v. Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563
          P.2d 871].)

8

9         More recently, the California Supreme Court reaffirmed:

10        It is well established in this state that parents may not recover damages for loss of filial
          consortium. (*Baxter v. Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563
11        P.2d 871].) Reasons of public policy explain why such a cause of action is not
          recognized, including: "[t]he intangible character of the loss, which can never really be
12        compensated by money damages; the difficulty of measuring damages; the dangers of
          double recovery of multiple claims and of extensive liability. ..." ( *Id.* at p. 464.)

13

14   *Burgess v. Superior Court,* 2 Cal.4th 1064, 1084, 9 Cal.Rptr.2d 615 ( 1992) ("we hold that damages

15   arising from loss of Joseph's affection, society, companionship, love and disruption of Burgess's

16   'normal' routine of life to care for Joseph cannot be recovered by Burgess no matter how her claim for

17   these damages is denominated."); *see Miller v. United States*, 803 F.Supp. 1120, 1124-1125 (E.D. Va.

18   1992) (claim for "destruction of the normal loving relationship between parents and child . . . is not

19   viable because California does not allow recovery for loss of consortium between parent and child.");

20   *Zavala v. Arce,* 58 Cal.App.4th 915, 937, 68 Cal.Rptr.2d 571 (1997) ("However, for public policy

21   reasons parents in California may not recover for loss of filial consortium. . . Zavala's recovery may not

22   include damages for emotional distress arising from loss of her child's affection, society, companionship

23   and love, or other similar loss of filial consortium.)

24        Based on the above authorities, the Government seeks to bar Lt. Col. Silong and Ms. Silong's

25   claims for "[l]oss of parent-child consortium, loss of companionship, love, nurturing, and affection."

26        The Government continues that despite the legal bar to Lt. Col. Silong and Ms. Silong's loss of

27   consortium claims, the claims lack "basis in fact." The Government notes that Paige's shoulder injury

28   "has not deprived her parents Paige's love, affection or companionship." The Government points to Lt.

8

1   Col. Silong and Ms. Silong's deposition testimony that they have the same love and affection from Paige

2   as from their 10-year-old son and that they have a caring, affectionate relationship with Paige that is not

3   compromised by her shoulder condition.  Lt. Col. Silong and Ms. Silong acknowledge that they spend

4   more "quality" time with Paige because of her shoulder condition, Ms. Silong's decision not to return

5   to work or hire a nanny, and Lt. Col. Silong's decision to transfer from the Navy to the Air Force to

6   avoid 10-month aircraft carrier deployments.  The Government contends that Lt. Col. Silong and Ms.

7   Silong "have not suffered any loss of consortium, companionship, love, nurturing or affection."

8       Lt. Col. Silong and Ms. Silong agree that California law bars their loss of consortium claims and

9   to dismissal of such claims.  The Government is entitled to summary adjudication that Lt. Col. Silong

10  and Ms. Silong are not entitled to recover on loss of consortium claims.

11  **Lt. Col. Silong And Ms. Silong's Emotional Distress**

12      The Government points out that plaintiffs' complaint does not allege a claim or prayer for Lt.

13  Col. Silong or Ms. Silong's "emotional distress."  The Government argues that since F.R.Civ.P. 8(a)

14  requires "a demand for judgment for the relief the pleader seeks," a complaint "defines the scope of

15  issues."  The Government points to an absence of claims for Lt. Col. Silong and Ms. Silong's emotional

16  distress and computation of such damages in their F.R.Civ.P. 26(a)(1) initial disclosures.   The

17  Government argues that the nature and extent of injuries must be disclosed, including amounts claimed

18  for general damages (pain and suffering).  *See City and County of San Francisco v. Tutor-Saliba Corp.*,

19  218 F.R.D. 219, 221 (N.D. Cal. 2003).

20      The Government continues that Lt. Col. Silong and Ms. Silong's discovery and deposition

21  responses fail to allege or support emotional distress or general damages claims.  As noted by the

22  Government, Lt. Col. Silong's interrogatory responses regarding damages raised objections, reiterated

23  their complaint's allegations, and provided no meaningful information.  The Government further points

24  to the absence of produced documents to support a factual basis for Lt. Col. Silong and Ms. Silong's

25  general damages.  The Government notes that Lt. Col. Silong and Ms. Silong have not claimed fright,

26  nervousness, grief, anxiety, mortification, shock, humiliation, indignity or physical pain from Paige's

27  birth or brachial plexus injury.

28      Lt. Col. Silong and Ms. Silong concede that they have not pled a claim for "emotional distress"

1    damages and assert that "use of summary judgment for claims not part of this litigation is a misuse of

2    the Court's time and resources."

3        Lt. Col. Silong and Ms. Silong are correct that they do not pursue a claim for "emotional distress'

4    damages.  This Court presumes that the Government addressed such claim out of an abundance of

5    caution to clarify what damages claims Lt. Col. Silong and Ms. Silong pursued based on their discovery

6    responses and objections.  Although Lt. Col. Silong and Ms. Silong's emotional distress damages are

7    not put in issue by their complaint to warrant summary adjudication, this Court nonetheless bars Lt. Col.

8    Silong and Ms. Silong to pursue emotional distress damages.

9                        **Lt. Col. Silong's Negligence Claim**

10       The Government contends the Lt. Col. Silong is unable to allege or establish that the Government

11   breached a legal duty to him to support a negligence claim.

12       The negligence elements which a plaintiff must prove are: (1) legal duty of care owed to plaintiff;

13   (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the

14   resulting injury; and (4) actual loss or damage resulting from breach of the duty of care.  *See Hanson v.*

15   *Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999); *see also Burgess v. Superior Court*, 2

16   Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992).  "Whether a defendant owes a duty of care is a question

17   of law.  Its existence depends upon the foreseeability of the risk and a weighing of policy considerations

18   for and against imposition of liability."  *Burgess*, 2 Cal.4th at 1072, 9 Cal.Rptr.2d 615.  A duty of care

19   arises when it is assumed by the defendant, imposed on the defendant as a matter of law, or arises out

20   of a relationship between plaintiff and defendant.  *Marlene F. v. Affiliated Psychiatric Medical Clinic,*

21   *Inc.*, 48 Cal.3d 583, 590, 257 Cal.Rptr. 98 (1989).

22       The Government notes that plaintiffs' complaint fails "to specify what legal duty was owed to

23   Lt. Col. Silong or that any breach of that duty occurred."  The Government points out that the portion

24   of the complaint entitled "Cause of Action Against the United States of America" fails to mention Lt.

25   Col. Silong.  The Government further notes the absence of allegations that Lt. Col. Silong had a

26   physician-patient relationship with Dr. Winkelman or the hospital, that the Government assumed an

27   applicable duty to Lt. Col. Silong, or that such duty was imposed by law.

28       The Government continues that Lt. Col. Silong fails to meet requirements for a bystander victim

1    negligence claim.  In *Burgess*, 2 Cal.4th at 1072-1073, 9 Cal.Rptr.2d 615, the California Supreme Court

2    contrasted "bystander" and "direct victim" cases:

3            The distinction between the "bystander" and "direct victim" cases is found in the
        source of the duty owed by the defendant to the plaintiff. The "bystander" cases,
4        commencing with *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912],
        and culminating in *Thing, supra,* 48 Cal.3d 644, address "the question of duty in
5        circumstances in which a plaintiff seeks to recover damages as a percipient witness to the
        injury of another." (*Christensen, supra,* 54 Cal.3d at p. 884.) These cases "all arise in the
6        context of physical injury or emotional distress caused by the negligent conduct of a
        defendant with whom the plaintiff had no preexisting relationship, and to whom the
7        defendant had not previously assumed a duty of care beyond that owed to the public in
        general." (*Ibid.*, italics added.) In other words, bystander liability is premised upon a
8        defendant's violation of a duty not to negligently cause emotional distress to people who
        observe conduct which causes harm to another.

9

10   In *Thing v. La Chusa*, 48 Cal.3d 644, 647, 257 Cal.Rptr. 865 (1989), the California Supreme Court set

11   limits to bystander liability:

12           In the absence of physical injury or impact to the plaintiff himself, damages for
        emotional distress should be recoverable only if the plaintiff: (1) is closely related to the
13       injury victim, (2) is present at the scene of the injury-producing event at the time it
        occurs and is then aware that it is causing injury to the victim and (3) as a result suffers
14       emotional distress beyond that which would be anticipated in a disinterested witness.

15   Turning to a father's claim for injury to his child during prenatal care and birth, the California Supreme

16   Court has observed that "the physician-patient relationship critical to a mother's cause of action is almost

17   always absent in a father's claim.  It, therefore, appears that a father must meet the criteria set forth in

18   *Thing, supra*, 48 Cal.3d 644, 257 Cal.Rptr. 865. 771 P.2d 814, if he is to state a viable claim." *Burgess*,

19   2 Cal.4th at 1078, n. 8, 9 Cal.Rptr.2d 615.

20           The Government contends that Lt. Col. Silong is unable to meet *Thing* criteria given the absence

21   of his bystander victim claim.  The Government points to Lt. Col. Silong's deposition testimony that he

22   was unaware of Paige's injury during birth.  The Government concludes that Lt. Col. Silong lacked

23   contemporaneous knowledge of alleged malpractice or injury and did not suffer requisite emotional

24   distress for a bystander victim claim.

25           Lt. Col. Silong appears to concede that he did not pled a bystander victim and asserts that "use

26   of summary judgment for claims not part of this litigation is a misuse of the Court's time and resources."

27   Lt. Col. Silong appears to acknowledge he lacks legal grounds for a bystander victim claim.

28           A bystander victim claim is not apparent from the complaint.  This Court presumes that the

11

1   Government addressed such claim out of an abundance of caution to clarify what claims Lt. Col. Silong

2   pursued based on his discovery responses and objections.  Although a bystander victim claim for Lt. Col.

3   Silong is not put in issue by the complaint to warrant summary adjudication, this Court nonetheless bars

4   Lt. Col. Silong to pursue a bystander victim claim.

5                                   **Paige's Lost Earning Capacity Claim**

6           The Government argues that Paige's shoulder injury should not decrease her life-long earnings.

7   The Government contends that Paige's lost earning capacity claim fails because there is no dispute that

8   Paige is able to perform 90 percent of jobs.  The Government argues that "the test is not whether Paige

9   can perform *all* jobs, but whether it is reasonably probable that her shoulder injury will cause her to

10  sustain lost earnings in the future."  (Italics in original.)

11          Plaintiffs argue that "the evidence conclusively establishes Paige Silong's diminished capacity

12  to work due to her permanent arm injury."  Plaintiffs respond that in the absence of dispute that Paige

13  suffered a permanent injury, she may pursue a lost earning capacity claim.

14                                      ***Reasonable Certainty***

15          To support its position, the Government points to the following from *Walden v. United States*,

16  31 F.Supp.2d 1230, 1235 (S.D. Cal. 1998):

17          Plaintiff can only recover those elements that he can prove with reasonable
        certainty. "The burden of proof is upon the party claiming damage to prove that he has
18      suffered damage and to prove the elements thereof with reasonable certainty." *Peters v.
        Lines*, 275 F.2d 919, 930 (9th Cir.1960).  It follows that any claim by plaintiff for lost
19      wages, medical expenses, and impaired future earning capacity must be supported by
        concrete evidence, not merely an optimistic forecast of loss divorced from plaintiff's past
20      history substantiated by the facts. *See, Fleming v. American Export Isbrandtsen Lines,
        Inc.*, 318 F.Supp. 194 (S.D.N.Y.1970), aff'd 451 F.2d 1329 (2nd Cir.1971).

21
            An award for lost or future earnings must be based on actual proof of the amount
22      of impairment and not mere conjecture. *Oregon-Washington R.R. & Nav. Co. v.
        Branham*, 259 F. 555, 557 (9th Cir.1919); *Firth v. United States*, 554 F.2d 990 (9th
23      Cir.1977). The base figure used to calculate future wage loss is the difference between
        what a person earned before the accident and what he would be able to earn upon
24      returning to work, not necessarily in the same job.

25  "[D]amages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as

26  a legal basis for recovery." *Frustuck v. City of Fairfax,* 212 Cal.App.2d 345, 367-368, 28 Cal.Rptr. 357

27  (1963).

28          The Government argues that plaintiffs do not meet their burden to establish reasonable certainty

of future lost earning capacity for five-year-old Paige and that no reliable evidence demonstrates reasonable certainty that Paige will sustain future lost earnings. The Government points to the deposition testimony of plaintiffs' physician-life care plan expert Alex C. Willingham ("Dr. Willingham") that "I don't see any reason why the child could not as an adult pursue some type of work activity or vocational or self support perspective. There will be things she can't do, but that doesn't mean there won't be anything she can't do."

The Government points to the deposition testimony of its vocational rehabilitation expert Andrew Michael O'Brien that Paige will not suffer future lost earning capacity because:

1.    Her physical impairment has mild functional limitations;

2.    She reasonably should be able to participate in occupations consistent with her physical limitations to provide an equal or greater earning potential;

3.    Her parents are college-educated to serve as a great predictor of future academic success;

4.    Her left upper extremity limitations do "not preclude the lion's share of white-collar types of employment [which] can be easily accommodated and, again, would provide her with essentially the same earning potential as those which she's precluded from";

5.    She will be able to perform a full-range of sedentary, light- and medium-level work;

6.    She should not have a keyboarding impairment; and

7.    She is not intellectually impaired.

The Government notes further factors to support no lost earning capacity:

1.    The types of jobs precluded by shoulder injury are low paying and not performed typically by women;

2.    Even without a college degree, Paige, as a woman, with reasonable probability would not seek jobs requiring significant bimanual overhead strength;

3.    Paige lacks a mental or cognitive impairment; and

4.    Lt. Col. Silong and Ms. Silong testified that they will support Paige's educational and vocational aspirations.

The Government concludes that Paige's inability to perform some jobs does not establish reasonable probability that her shoulder injury causes lost earning capacity.

13

1    Plaintiffs respond there is no dispute that Paige suffered a permanent disability.  Plaintiffs point

2  to the deposition testimony of Paige's treating surgeon Rahul Nath, M.D. ("Dr. Nath"): "She has a

3  permanent injury to severe injury.  She'll require lifelong management of that, including multiple

4  surgeries and including lifelong physical therapy and other modalities, as well."  Plaintiffs argue that the

5  evidence creates material factual issues as to Paige's future earning capacity to defeat summary

6  adjudication of the claim.

7    Plaintiffs point to an unpublished decision *Roberts Barrows v. Schneider National Carriers, Inc.*,

8  1998 U.S. App. Lexis 17536 (9th Cir. 1998), where the Ninth Circuit Court of Appeals observed that "in

9  the ordinary case, and as a general rule, evidence that a plaintiff sustained a permanent injury is

10  sufficient to entitle him to submit to the jury the question whether there has been an impairment of his

11  future earning capacity."  (quoting *Tavenner v. Figini*, 273 Ore. 415, 541 P.2d 437, 438 (Or. 1975)).

12  Plaintiffs further point to an unpublished California district court decision *Simplicio v. United States*,

13  1991 U.S. Dis. Lexis 18081, *20 (N.D. Cal. 1991), where the court noted that "[l]oss of earning power

14  is an element of general damages that may be inferred from the nature of the injury, with or without

15  proof of actual earnings or income either before or after the injury."  (quoting *Hilliard v. A.H. Robins*

16  *Co.*, 148 Cal.App.3d 374, 412, 196 Cal.Rptr. 117 (1983).

17    Plaintiffs note the deposition testimony of the Government's physical rehabilitation expert

18  Joseph Capell, M.D. ("Dr. Capell"), examined Paige and estimates there are more than 1,000 jobs which

19  Paige will be unable to perform.  Dr. Capell testified:

20      Well, my opinion is that in the future in spite of optimal treatment, Paige is going
    to continue to have some limitations in terms of her upper – left upper extremity
21      function.  And these limitations will be stated in vocational terms.  A limitation from
    very heavy lifting using both arms at shoulder level and above or prolonged work with
22      both arms, or hands in this case, at shoulder level or above.  Those are the two
    preclusions.
23
        And those two preclusions do eliminate certain jobs that she probably would be
24      able to do but not in a competitive fashion and shouldn't really be considered
    employment.
25

26  Plaintiffs further point to the deposition testimony of their physical rehabilitation expert Dr. Willingham

27  that "there will be . . . restrictions of some jobs that she will never be capable of."  Plaintiffs conclude

28  that Paige's permanent injury precludes certain jobs and no less than 10 percent of the job market.

14

1   Future lost earning capacity is not a precise science to render specific calculation.  Imprecision

2   is compounded in that Paige is five years old with no work history.  There is no meaningful dispute that

3   Paige suffered a permanent injury which she will carry through adulthood.  The issue is not whether

4   Paige will work.  The issue is how and the extent to which her injury will impact her earning capacity.

5   The parties' experts agree that Paige is foreclosed from no less than 10 percent of otherwise available

6   work.  That she would unlikely pursue the foreclosed jobs is a factor but not dispositive of the future

7   earning capacity issue.  Plaintiffs have raised a factual issue that Paige's future earning capacity is

8   impaired.  Their burden at trial is to prove the extent to entitle Paige to potential recovery for lost future

9   earning capacity.  Based on the evidence presented, this Court is not in a position at this point to

10   foreclose Paige's future earning capacity claim.

11                                                    ***Impairment Rating***

12                The Government attributes plaintiffs to pursue $1 million lost earning capacity claim based on

13   an "impairment rating" prepared by plaintiffs' life care planning expert Dr. Willingham.   The

14   Government attributes plaintiffs' economist to have multiplied the "whole body impairment rating" for

15   Paige's shoulder injury by the number of years of her productive work life to render use of the

16   impairment rating improper or unreliable.

17                Plaintiffs accuse the Government of mispresenting the "evidence on this issue" in that plaintiffs'

18   economist testified that Paige's 10 percent impairment translated to a future lost earning capacity of

19   $130,000-$280,000.

20                The Government contends that plaintiffs are unable to rely on a whole body impairment rating

21   to support future lost earnings because:

22                     1.    There is a difference between physical impairment medically and impairment that affects

23                            ability to earn;

24                     2.    Plaintiffs' life care expert Dr. Willingham drafted the impairment rating and

25                            acknowledges that it is not intended to reflect specific claimed lost earning capacity;

26                     3.    The impairment rating's accuracy has not been confirmed given that it is based on an

27                            examination of Paige 2½ years ago;

28                     4.    Impairment ratings are used for workers' compensation for employed persons, not

1    minors with no work history; and

2         5.     California courts exclude workers' compensation information in civil cases.

3    The Government concludes that the impairment rating "cannot form the basis for a determination that

4    it is reasonably certain that Paige will sustain any lost earnings."

5         The Government characterizes impairment ratings as "merely tools used for determining workers

6    compensation benefits" which cannot be used in a civil action to evidence lost earning capacity.  The

7    Government points to *Scalice v. Performance Cleaning Systems*, 50 Cal.App.4th 221,231-232, 57

8    Cal.Rptr.2d 711 (1996), where the California Court of Appeal explained:

9         The difference in workers' compensation benefits and the economic damages . . . stems
10   from the fundamentally different nature of the workers' compensation system and the tort
     law system. The foundation of the workers' compensation system is the presumed
11   compensation bargain, wherein the employer assumes liability for industrial injury or
     death without regard to fault and the employee is afforded relatively quick payment of
12   benefits. . . .

     . . . Although some items of workers' compensation benefits resemble economic
13   damages, others do not. The system is a substitute for bringing an action against an
     employer, and the benefits paid are akin to a compromise payment made to avoid
14   litigation. Therefore, rather than attempting to fit the different components of worker's
     compensation benefits into specified items of out-of-pocket or more subjective losses,
15   we view the benefits as the proceeds of a settlement imposed by the Legislature for
     claims arising out of and occurring in the course of employment.
16

17   *See also Clemente v. State of California,* 40 Cal.3d 202, 222, 219 Cal.Rptr. 445 (1985) ("courts have

18   recognized the legal fiction of the 100 percent disability rating").

19        Plaintiffs do not meaningfully respond to the Government's impairment rating contentions.  As

20   such, this Court presumes plaintiffs do not rely on an impairment rating to oppose summary

21   adjudication.  In any event, this Court does not deny the Government summary adjudication on the future

22   earning capacity claim based on plaintiffs' proposed impairment rating.

23   **Past Medical Expenses**

24        Plaintiffs' complaint alleges claims for past "medical, health care, and attendant care expenses."

25   The Government contends such damages claims are barred based on plaintiffs' failure to disclose

26   evidence on computation of such damages and supporting documents.  The Government appears to focus

27   on F.R.Civ.P. 26(a)(1)(C)'s requirement to provide damages computations with initial disclosures and

28   plaintiffs' failure to produce such computations and documents to reflect past medical expenses in

response to the Government's document requests. The Government notes that Lt. Col. Silong and Ms. Silong did not produce at their May 2007 depositions records of past medical expenses despite the Government's requests for the documents. The Government points to Lt. Col. Silong and Ms. Silong's deposition testimony that they paid out-of-pocket medical expenses and have records of expenses for which they have not searched.

"The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with discovery and pretrial orders is essential" to judicial case management. *Sylla-Sawdon*, 47 F.3d at 284; *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897-898 (8th Cir. 1978). A party is prejudiced by its opponent's actions to impair ability to proceed to trial or to threaten to interfere with the case's rightful decision. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990); *Malone v. United States Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987), *cert. denied sum nom Malone v. Frank*, 488 U.S. 819, 109 S.Ct. 59 (1988).

F.R.Civ.P. 26(e)(2) addresses supplementation of discovery responses and provides:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material aspect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

F.R.Civ.P. 26(g)(2) addresses the significance of an attorney's signature to discovery responses: "The signature of the attorney . . . constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the . . . response . . . is: (A) consistent with these rules . . ." Under F.R.Civ.P. 26(g)(3), sanctions may be imposed for an improper certification: "If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the . . . response . . . is made, or both, an appropriate sanction . . ." Such sanction may preclude the violating party form introducing designated evidence. F.R.Civ.P. 37(b)(2)(B).

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778 (1976), the United States Supreme Court stressed that the most severe sanctions provided by the rules "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in

1   the absence of such a deterrent."

2       Lt. Col. Silong and Ms. Silong note that they incurred "a small amount of out of pocket

3   expenses" for Paige's injury but "could not quantify the amount and could not document what those

4   amounts were."  Plaintiffs note that TRICare[3] has covered Paige's past medical expenses.  As such,

5   plaintiffs note they "will not submit past medical expenses and out of pocket expenses as elements of

6   damages at the time of trial and agree with their preclusion at trial."

7       Plaintiffs apparently fold on their claim for past medical expenses in that they agree not to

8   present evidence on such expenses.  In the absence of a dispute over past medical expenses, the

9   Government is entitled to summary adjudication on plaintiffs' claim for past medical expenses.

10                              **Future Medical Expenses Offset**

11      The Government asserts an affirmative defense of "offset for any and all collateral sources of

12  indemnity to Plaintiffs."  The Government seeks summary adjudication that it is entitled to an offset for

13  Paige's future medical expenses because the Government will continue to fund the expenses under

14  existing federal TRICare benefits until Paige reaches age 21, or age 23, if she attends college.  The

15  Government characterizes an award of future medical expenses as a windfall to plaintiffs in that the

16  Government continues to pay for such expenses.

17      The Government points to California Civil Code section 3333.1(a) ("section 3333.1(a)"), which

18  provides in pertinent part:

19          In the event the defendant so elects, in an action for personal injury against a health care
            provider based upon professional negligence, he may introduce evidence of any amount
20          payable as a benefit to the plaintiff as a result of the personal injury pursuant to . . . any
            health, sickness or income-disability insurance, accident insurance that provides health
21          benefits or income-disability coverage, and any contract or agreement of any group,
            organization, partnership, or corporation to provide, pay for, or reimburse the cost of
22          medical, hospital, dental, or other health care services. Where the defendant elects to
            introduce such evidence, the plaintiff may introduce evidence of any amount which the
23          plaintiff has paid or contributed to secure his right to any insurance benefits concerning
            which the defendant has introduced evidence.
24

25  In *Fein v. Permanente Medical Group,* 38 Cal.3d 137, 164-165, 211 Cal.Rptr. 368 (1985), the California

26  Supreme Court explained application of California Civil Code section 3333.1(a):

27  ────────────

28      [3]      TRICare is the Department of Defense's worldwide health care program for active duty and retired service
        personnel and their families.

                                        18

1      Under section 3333.1, subdivision (a), a medical malpractice defendant is permitted to
2  introduce evidence of such collateral source benefits received by or payable to the
  plaintiff; when a defendant chooses to introduce such evidence, the plaintiff may
3  introduce evidence of the amounts he has paid – in insurance premiums, for example –
  to secure the benefits. Although section 3333.1, subdivision (a) – as ultimately adopted
4  – does not specify how the jury should use such evidence, the Legislature apparently
  assumed that in most cases the jury would set plaintiff's damages at a lower level because
5  of its awareness of plaintiff's "net" collateral source benefits.

6  "Apparently, the Legislature's assumption was that the trier of fact would take the plaintiff's receipt of

7  such benefits into account by reducing damages." *Barme v. Wood,* 37 Cal.3d 174, 179, 207 Cal.Rptr.

8  816 (1984).

9      In connection with an FTCA case, one district court has observed:

10      In sum, the weight of authority clearly demonstrates that plaintiff is not entitled
  to recover any medical expenses already paid by the government. To award her such
11  expenses would require the government to pay for the same services twice and allow the
  plaintiff a double recovery. The Federal Tort Claims Act is designed to compensate those
12  wronged by the U.S. government in tort actions; it is not a reward system designed to
  provide windfalls to tort claimants.
13

14  *Kornegay v. United States,* 929 F.Supp. 219, 222 (E.D. Va. 1996).

15      Plaintiffs argue that the Government has failed to offer evidence to support a "complete future

16  offset." Plaintiffs argue that TRICare payment of past medical expenses does not entitle the Government

17  to a blanket offset. Section 3333.1(a) does not preclude recovery of future medical expenses but "rather,

18  it allows the jury to decide how to apply the evidence in calculation of damages. As such, the fact that

19  all medical expenses may have been paid from a collateral source . . . does not stand for the proposition

20  that a plaintiff has suffered no recoverable damages . . ." *Hernandez v. California Hospital Medical*

21  *Center,* 78 Cal.App.4th 498, 505, 93 Cal.Rptr.2d 97(2000).

22      Plaintiffs contend that the Government is not entitled to an offset because the Government's

23  future medical insurance benefits expert, Tess Wolstenholme ("Ms. Wolstenholme"), lacks expertise

24  on TRICare coverage [4] for Paige's future medical care. Ms. Wolstenholme is a health benefits advisor

25  and beneficiary assistance counseling coordinator at Lemoore Naval Air Station and is responsible to

26

27      [4]    Plaintiffs filed a belated summary adjudication motion on the offset issue. Plaintiffs combined the summary
  adjudication motion with a motion to exclude Ms. Wolstenholme's testimony. This Court construes the combined motions
28  as an opposition to the Government's summary adjudication motion on the offset issue.

1   coordinate insurance coverage for military personnel and their dependents.  Plaintiffs argue that the

2   Government cannot meet its summary adjudication burden in the absence of competent expert testimony

3   on TRICare coverage for Paige's future medical care.

4          Plaintiffs point to F.R.Evid. 702, which provides:

5                 If scientific, technical, or other specialized knowledge will assist the trier of fact
        to understand the evidence or to determine a fact in issue, a witness qualified as an expert
6       by knowledge, skill, experience, training or education, may testify thereto in the form of
        an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
7       testimony is the product of reliable principles and methods, and (3) the witness has
        applied the principles and methods of reliability to the facts of the case.

8

9   Plaintiff further point to *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141-142, 119 S.Ct. 1167

10  (1999), where the United States Supreme Court explained:

11                We conclude that *Daubert*'s[5] general holding – setting forth the trial judge's
        general "gatekeeping" obligation – applies not only to testimony based on "scientific"
12      knowledge, but also to testimony based on "technical" and "other specialized"
        knowledge. *See* Fed. Rule Evid. 702. We also conclude that a trial court may consider
13      one or more of the more specific factors that Daubert mentioned when doing so will help
        determine that testimony's reliability. But, as the Court stated in Daubert, the test of
14      reliability is "flexible," and Daubert's list of specific factors neither necessarily nor
        exclusively applies to all experts or in every case. Rather, the law grants a district court
15      the same broad latitude when it decides how to determine reliability as it enjoys in
        respect to its ultimate reliability determination.

16

17         Plaintiffs point out that the Government relies on Ms. Wolstenholme to provide technical or

18  other specialized knowledge but that her deposition testimony reveals "that her opinion substantially

19  fails to meet the reliability test required for admission pursuant to F.R.E. 702 and *Kumho Tire*."

20  F.R.Evid. 702 establishes a standard of evidentiary reliability and requires a valid connection to the

21  pertinent inquiry as a precondition to admissibility.  *Kumho Tire*, 526 U.S. at 149, 119 S.Ct. 1167.

22  Plaintiffs characterize the pertinent inquiry as whether "TRICare insurance will provide future coverage,

23  if any, for Paige Silong's medical needs.  Thus, the Court must determine whether Ms. Wolstenholme's

24  testimony has a 'reliable basis in knowledge and experience of the discipline.'"

25         Plaintiffs argue that Ms. Wolstenholme lacks requisite experience, training, education or

26  specialized knowledge to provide reliable expert opinion on future TRICare coverage.  Plaintiffs point

27

28      [5]      *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

to Ms. Wolstenholme's:

1. *Educational Background* – a two-year associates degree in office management from West Hills College;

2. *Current Work Experience* – "health benefits advisor" for two years during which she has acted as a liaison between military family members and TRICare personnel who have qualifications and authority to make TRICare coverage decisions.  Ms. Wolstenholme lacks responsibility to approve or deny TRICare coverage and admitted that she is unqualified to offer an opinion about what is medically necessary for TRICare coverage approval;

3. *Past Work Experience* – secretarial, clerk and personal assistant; and

4. *Lack of Specialized Training* – No professional or specialized training on TRICare coverage or insurance coverage.

Plaintiffs further note that Ms. Wolstenholme conceded that she has not reviewed Paige's medical history to acknowledge that Ms. Wolstenholme is unfamiliar with Paige's past and future medical needs. Ms. Wolstenholme has not determined what Paige's future medical needs will be.

To address Ms. Wolstenholme's qualifications, the Government submits her declaration that she received "extensive informal and on-the-job training" on TRICare coverage and devotes 50 percent of her time to explain TRICare benefits to military families and 35 percent of her time to "working with the health care providers, case managers, TriCare representatives, families, and others regarding submittals, responding to questions, monitoring paperwork and requested activities, and to ensure that claims are properly submitted and paid and that medically necessary treatment is approved and received."  Ms. Wolstenholme notes that prior to her deposition, she compiled information on Paige, including "requests for treatment, referrals and care, and all TriCare responses including dates of the response, whether it was approved or disapproved, and, if disapproved, the reason why."  Ms. Wolstenholme concludes:

> My duties and responsibilities as a Health Care Advisor require me to know the terms and conditions of TriCare coverage, eligibility issues, what is and is not covered, the process for submittals and approvals, the transition from active military to retire, and everything health benefits related.  As such, I am capable of offering qualified, reliable and relevant testimony about Silong's TriCare coverage at trial.

1   The Government further points to Ms. Wolstenholme's testimony that TRICare will cover

2   Paige's "medically necessary" expenses.   The Government asserts that questions as to Ms.

3   Wolstenholme's qualifications go to the weight of her testimony, not its admissibility.  In addition to Ms.

4   Wolstenholme, the Government notes that it "relies on multiple sources to prove offsets including,

5   without limitation, Plaintiffs' admissions, documentary evidence, confirmed payment of all past medical

6   expenses, ongoing coverage, terms of future coverage if Lt. Col. Silong retires, and the deposition

7   testimony of Lt. Com. Yoakley, Dr. Nath, and others."

8   State and federal law provide the Government legal grounds to seek an offset.  In other words,

9   as a matter of law, the Government may seek an offset.  The question turns to evidence to support the

10   offset.  Plaintiffs take the position that the Government lacks competent offset evidence based on Ms.

11   Wolstenholme's lack of qualifications.   The evidence raises a question as to Ms. Wolstenholme's

12   qualifications to opine on future TRICare coverage and the weight to give to her opinions.  Ms.

13   Wolstenholme is a two-year health benefits advisor and apparently not employed by TRICare.  The

14   Government claims it will produce evidence in addition to Ms. Wolstenholme but fails to detail such

15   evidence.  The parties do not identify specific future care for Paige.  At this stage, this Court is left to

16   examine the offset question in a vacuum in that if Ms. Wolstenholme is the Government's primary

17   source of TRICare coverage opinion (and the Government has given this Court no meaningful grounds

18   to believe otherwise), the Government lacks sufficient evidence for summary adjudication on the offset

19   issue.  With a factual dispute as to the competency of the Government's TRICare coverage evidence,

20   the Government has not satisfied its summary adjudication burden regarding offset.

21   Moreover, this Court is unclear as to what the Government seeks.  The Government notes that

22   TRICare will provide medical benefits until Paige reaches age 21 or 23, if she attends college.  The

23   Government appears to seek a blanket offset for all of Paige's future medical expenses without

24   consideration that she may not receive TRICare coverage after she reaches age 21 or 23.  Such factor

25   further prevents summary adjudication for the Government.

26   More fundamentally, as noted by plaintiffs, section 3333.1(a) does not preclude plaintiffs'

27   recovery of future medical expenses.  It allows this Court, as trier of fact, to determine how to apply

28   future TRICare benefits to damages calculation. TRICare coverage for Paige's future medical expenses

22

1   does not vitiate plaintiffs' claims for recoverable damages.  TRICare coverage is a factor for this Court

2   to consider.

3        As an alternative to an offset, the Government advocates establishment of a "trust" for future

4   medical expenses under California Code of Civil Procedure section 667.7(a), which provides in pertinent

5   part:

6          In any action for injury or damages against a provider of health care services, a
superior court shall, at the request of either party, enter a judgment ordering that money

7   damages or its equivalent for future damages of the judgment creditor be paid in whole
or in part by periodic payments rather than by a lump-sum payment if the award equals

8   or exceeds fifty thousand dollars ($50,000) in future damages. In entering a judgment
ordering the payment of future damages by periodic payments, the court shall make a

9   specific finding as to the dollar amount of periodic payments which will compensate the
judgment creditor for such future damages.

10

11   California Code of Civil Procedure section 667.7 does not specify establishment of a trust.  It provides

12   for periodic payments of future medical expenses exceeding $50,000.  Determination of the mechanism

13   of future medical expenses is premature at this time.

14        Lastly, this Court clarifies that it is not ruling on plaintiffs' belated motion to exclude Ms.

15   Wolstenholme's testimony. Since the Court addresses the Government's summary adjudication motion,

16   trial exclusion of Ms. Wolstenholme's testimony is not before the Court and is an issue for another day.

17   Furthermore, based on the above rulings, Lt. Col. Silong's sole remaining claim, if any, appears limited

18   to Paige's future medical expenses which he may incur prior to Paige turning age 18, at which point

19   Paige will be legally responsible for such expenses.  This Court is unclear if Lt. Col. Silong pursues such

20   a claim and requires Lt. Col. Silong to inform this Court in writing what, if any, damages claims Lt. Col.

21   Silong pursues.  If Lt. Col. Silong pursues no damages claims arising from Paige's medical care, this

22   Court intends to dismiss him as a plaintiff.

23                                    **CONCLUSION AND ORDER**

24        For the reasons discussed below, this Court:

25   1.     GRANTS the Government summary adjudication on Lt. Col. Silong and Ms. Silong's

26           loss of consortium claims;

27   2.     BARS Lt. Col. Silong and Ms. Silong to seek emotional distress damages;

28   3.     BARS Lt. Col. Silong to pursue a bystander victim claim;

1      4.      DENIES the Government summary adjudication on Paige's future lost earning

2              capacity claim;

3      5.      GRANTS the Government summary adjudication on plaintiffs' past medical expenses

4              claim;

5      6.      DENIES the Government summary adjudication that TRICare benefits offset Paige's

6              future medical expenses in their entirety; and

7      7.      ORDERS Lt. Col. Silong, no later than September 14, 2007, to file and serve his

8              statement to identify what, if any, damages claims he pursues in light of this Court's

9              rulings.

10     IT IS SO ORDERED.

11  **Dated:    September 5, 2007**              **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE