IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA MELISSA SILONG, et al., | CASE NO. CV F 06-0474 LJO DLB |
| Plaintiffs, | **DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/ ADJUDICATION, AND TO EXCLUDE EXPERT TESTIMONY OF PLAINTIFFS' EXPERTS EDELBERG AND ALLEN** (Doc. 61) |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Defendant. / | |

**INTRODUCTION**

In this medical malpractice action addressing complications of the birth of minor plaintiff Paige Silong ("Paige"), Defendant United States of America ("the Government") seeks summary judgment/ adjudication and/or exclusion of Plaintiffs'[1] expert witnesses Stuart C. Edelberg, M.D. ("Dr. Edelberg") and Robert Allen, Ph.D. ("Dr. Allen"). This Court considered the Government's motion without a hearing, pursuant to stipulation by the parties. For the reasons discussed below, this Court rules that the expert opinion of Dr. Edelberg is limited to those expressed in his expert report. The Court further finds that Plaintiffs do not have an expert opinion to establish an essential element of their medical

---

[1] Gina Silong ("Ms. Silong") and Lt. Col. Richard Silong (collectively "Plaintiffs") proceed in this action on behalf of themselves and Paige.

malpractice claims, as required by California law. Accordingly, the Government's motion for summary judgment is GRANTED.[2]

## BACKGROUND

On March 5, 2001, Ms. Silong was eight weeks pregnant with Paige and began prenatal care at Lemoore Naval Hospital ("hospital"). On October 20, 2001 at 4:20 a.m., Ms. Silong arrived at the hospital's maternal infant unit in active labor. The delivery team encountered shoulder dystocia that physically impeded Paige's normal descent through the birth canal. Shoulder dystocia results when the baby's shoulder becomes impacted or caught within the birthing canal after the baby's head is delivered to prevent full delivery of the baby. Dane Winkelman, M.D. ("Dr. Winkelman"), applied traction, pulling on Paige's head, to facilitate delivery, and Paige was delivered at 5:28 a.m. Examination revealed weakness to Paige's left arm, consistent with injury to her brachial plexus, a network of nerves in the neck and armpit. Injury affecting nerves in the spine at C5-C6 is referred to as Erb's palsy. Paige's brachial plexus condition may not resolve.

### Plaintiffs' Claims

Plaintiffs proceed on their original complaint to pursue medical malpractice claims against the Government, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Plaintiffs allege that the Government was "negligent in its antepartum and intrapartum medical, nursing and hospital care of Gina Silong and Paige Silong in the following ways:"

  1)   Failing to properly and timely care for Ms. Silong and Paige;
  2)   Failing to properly and timely treat Ms. Silong and Paige;
  3)   Failing to properly and timely diagnose Ms. Silong and Paige;
  4)   Failing to properly and timely monitor Ms. Silong and Paige;
  5)   Failing to warn Ms. Silong of the risk of shoulder dystocia occurring during the birthing process; and

---

[2]This Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary adjudication.

2

6) Failing to properly deliver Paige.

### Government's Arguments

In this motion for summary judgment, the Government seeks to exclude two of Plaintiffs' expert witnesses. The Government contends that Plaintiffs' sole standard of care obstetrics expert, Dr. Edelberg, should be excluded for alleged failures to comply with Fed. R. Civ. P. 26(a)(2)(B) and (e)(1) and Fed. R. Civ. P. 34. Alternatively, the Government seeks to exclude the testimony of Dr. Edelberg and Plaintiffs' biomedical engineering expert, Dr. Allen, for allegedly failing to meet the reliability and fitness requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny. Without the testimony of the expert witnesses, the Government argues, Plaintiffs can not establish the standard of care in this medical malpractice action. Thus, the Government concludes, Plaintiffs have failed to meet their burden on an essential element of their claim, making summary judgment appropriate.

### DISCUSSION

### Summary Judgment

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

### Governing Law

A district court applies the substantive law of the state where the negligent act or omission occurred in an FTCA action. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585 (1962). "The extent of the government's [FTCA] liability is a matter of federal law (28 U.S.C. §§ 1346(b), 2674), albeit determined according to state standards." *Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987). The Government points out that California substantive law applies to plaintiffs' claims given that "all activities," including Paige's prenatal care and birth, occurred in California but that federal law governs procedural matters. *See Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987).

### Dr. Edelberg's Expert Report

The Government argues that the testimony of Plaintiffs' expert witness, Dr. Edelberg, should be excluded for violations of the discovery and disclosure requirements of Fed. R. Civ .P. 26 ("Rule 26") and Fed. R. Civ. P. 34 ("Rule 34"). In the alternative, the Government requests that this Court limit the scope of Dr. Edelberg's testimony to the expert report, which it argues is "inadequate for Plaintiffs to meet their burden of proof on the essential *prima facie* elements of duty and breach."

Rule 26(a)(2)(B) requires that an expert report contain, among other things, a complete statement of all opinions to be expressed and the basis therefor, and the data or other information considered by the witness in forming the opinions. Rule 26(e)(1) requires a party to supplement an initial disclosure under Rule 26(a) "if the party learns that in some material respect the information disclosed is incomplete or incorrect."

Pursuant to Fed .R. Civ. P. 37(c)(1) ("Rule 37(c)(1)"), a "party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed." Rule 37(c)(1) "gives teeth . . . by forbidding the use at trial of any information required to

be disclosed by Rule 26(a) that is not properly disclosed" and provides a "self-executing," "automatic" sanction as "a strong inducement for disclosure of material." *Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting, in part, Rule 37 Advisory Comm. Notes (1993)).

The Ninth Circuit Court of Appeals gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106. The Ninth Circuit has explained that "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti*, 259 F.3d at 1106. "The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti*, 259 F.3d at 1107. Summary judgement may be imposed based on absence of evidence excluded for failure to comply with Rule 26(a). *See Wong v. Regents of the Univ. of California*, 379 F.3d 1097, 1103 (9th Cir. 2004).

The analysis section of Dr. Edelberg's expert report, composed of four sentences, states in its entirety:

> In all probability, when shoulder dystocia was encountered during the delivery process, excess downward lateral traction was employed to disimpact the shoulders and deliver the infant. This excess lateral traction directly caused the brachial plexus injury, and the employment of excess lateral traction during the management of routine shoulder dystocia fails to meet standard of care. Excess lateral traction is recognized as the most common cause of brachial plexus injuries. Had baby Page Silong been delivered only by routine maneuvers when shoulder dystocia was encountered and had no excess traction employed, the baby would have been delivered neurologically intact (i.e., no brachial plexus injury).

This analysis is based on the following (and admitted) incorrect statement of fact in the expert report, "No maneuvers were noted in the obstetrical record of disimpacting the shoulders."[3]

"A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefore." *Finwall v. City of Chicago*, 239 F.R.D.

---

[3] The obstetrical record contains a notation that the suprapubic pressure maneuver was employed. Although Dr. Edelberg admits his factual basis was incorrect, he never supplemented his report during the one year time period between writing his report on January 5, 2006 and the January 10, 2007 Expert Disclosure deadline. At his deposition, Dr. Edelberg declared that he did not intend to supplement his expert report, although he did amend the erroneous statement of fact on the record.

5

494, 501 (N.D. Ill. 2006) (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998). The Government argues that the expert report is insufficient and violates Rule 26 and this Court's order[4] in the following ways:[5] (1) the analysis fails to include factual support, (2) the analysis relies on one admittedly wrong fact, (3) the report never defines the standard of care and other essential elements of Plaintiffs' claim, and (4) Dr. Edelberg failed to identify any literature, studies, articles, or other documents that support his analysis. Plaintiffs argue that Dr. Edelberg "elaborated on those opinions on the standard of care and causation" in his deposition. In opposition to the present motion, Plaintiffs also include a 5-page declaration by Dr. Edelberg, "to establish facts not apparent from the record, including Dr. Edelberg's reiteration of the standard of care, his methodology in arriving at this conclusion on causation, and the bases of his opinions."

In violation of the requirements of Rule 26, Dr. Edelberg's report does not contain a complete statement of "all of the opinions to be expressed." Furthermore, it does not include a statement upon which his conclusions were based. Plaintiffs do not justify the inadequacies of the report or their subsequent attempts to offer evidence not contained in the report. Further, while Plaintiffs have the burden to prove harmlessness, *Yeti*, 259 F.3d 1101, 1107, they do not argue that this error is harmless. Instead, Plaintiffs attempt to cure these inadequacies by relying on deposition testimony and a declaration submitted in opposition to the present motion. Plaintiffs also do not explain why they failed to supplement Dr. Edelberg's initial expert report in the year between its submission and the closure of discovery.

Plaintiffs cannot now correct their Rule 26 violations by submitting a lengthy declaration more than six months after expert disclosures were due, three months after depositions were taken, two months after discovery closed and a month after pretrial motions were filed. This Court's August 29, 2006 Scheduling Order specifically required compliance with Rule 26 and cautioned that:

---

[4] The Government argues that Plaintiffs have violated this Court's Scheduling Order of August 29, 2006, which will be discussed more fully below.

[5] Additionally, the Government asserts that Dr. Edelberg failed to produce requested documents in violation of Fed. R. Civ. P. 34 and further failed to supplement his production, despite an express agreement at the deposition to provide relied upon materials.

> [Expert] disclosures must be made pursuant to [Rule]26(a)(2)(A) and (B) and shall include **all information** required thereunder. In addition, [Rule] 26(e) shall specifically apply to all discovery relating to expert witnesses and their opinions. **Failure to comply with these requirements will result in the imposition of appropriate sanctions, which may include the preclusion of testimony or other evidence offered through the expert witness. In particular, this Court will enforce preclusion of testimony or other evidence if F.R.Civ.P. 26(e) is not strictly complied with**. (Doc. 19, ¶ 6)(emphasis added)

The Ninth Circuit has expressly disallowed such new "evidence," including evidence presented in opposition to summary judgment motions. *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097, 1103 (9th Cir. 2004) ("Parties must understand that they will pay a price for failure to strictly comply with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusion of evidence); see also, *02Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1358 (Fed. Cir. 2006) ("Both the Ninth Circuit and this Court have concluded that the exclusion of evidence is often an appropriate sanction for the failure to comply with the Court's order."), citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding no abuse of discretion in excluding evidence pertaining to theories not disclosed as required by local rules and the court's scheduling order). Plaintiffs cannot cure the violations of Rule 26 and this Court's order by belatedly producing an expert declaration, which includes new opinions, facts, methodologies and analysis not contained in the initial expert report.

In accordance with Rule 37(c)(1), the exclusion of non-disclosed evidence is mandatory. Therefore, the testimony, opinions and information provided by Dr. Edelberg is strictly limited to that which is disclosed in his expert report. Dr. Edelberg is precluded from testifying regarding liability and causation beyond that which is stated in the four-sentence "Analysis" section of his expert report. Any evidence provided in deposition or declaration beyond the information explicitly stated in Dr. Edelberg's expert report is excluded.

### Prenatal Claims and Failure to Warn

Plaintiffs' first four claims allege prenatal negligence for "failing to properly and timely"care, treat, diagnose, and monitor Ms. Silong and Paige prior to the delivery. Plaintiffs' fifth claim alleges that the Government was negligent in failing to warn Ms. Silong of the risk of shoulder dystocia during the delivery of Paige. The Government argues that the expert report of Dr. Edelberg, Plaintiffs' sole

obstetrics liability expert, does not include any discussion, opinion or analysis regarding these five allegations. Plaintiffs did not address this argument in opposition to the present motion. This Court agrees that Dr. Edelberg did not address any of the first five claims in his expert report. Without an expert opinion to establish essential elements of these claims, as discussed more fully below, summary adjudication is appropriate.

**Proper Delivery of Paige**

Plaintiff's sixth and final claim alleges that the Government failed to properly deliver Paige. In a California medical malpractice action, the plaintiff must establish: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Elcome v. Chin*, 110 Cal. App. 4th 310, 317 (2003). The standard of care "against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony, unless the conduct required by the particular circumstances is within the common knowledge of the layman." *Hanson v. Grode*, 76 Cal. App. 4th 601, 606-07 (1999), quoting *Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal. 4th 992, 1001 (1994). The circumstances under which a person should properly deliver a baby after shoulder dystocia occurs during a spontaneous birth are beyond a layperson's knowledge. Accordingly, expert testimony is required to determine whether Dr. Winkleman's actions met the standard of care imposed on physicians.

California courts have incorporated the expert evidence requirement into their summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence. *Hutchison v. United States*, 838 F.2d 390, 392 (9th Cir. 1988), citing *Willard v. Hagemeister*, 121 Cal. App. 3d 406, 412 (1981). This reasoning is applicable when a defendant moves for summary judgment under Fed. R. Civ. P. 56. *Hutchison,* 838 F.2d 390, 392. "...since California medical malpractice law applies, when a defendants supports his motion for summary judgment with the declarations of experts, a plaintiff who

has presented no expert evidence concerning the required standard of care has failed to make a sufficient showing that there are genuine factual issues for trial." *Id.*

On issues where the nonmovant party bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-57. Here, Plaintiffs have the ultimate burden of proving the elements of medical malpractice, including the standard of care, but have not provided any expert testimony establishing this element. As the Government points out, Dr. Edelberg's expert report does not define the standard of care for delivering shoulder dystocia babies, never identifies appropriate maneuvers or when those maneuvers should be used, does not discuss whether traction is allowed, what constitutes "gentle" traction and what is "excess" traction. As such, it does not assist the trier of fact in determining critical elements of this cause of action.

Further, Plaintiffs reliance on the testimony of Rahul K. Nath, M.D. ("Dr. Nath") is misplaced. Although Plaintiffs identified Dr. Nath as a "treater," this is not sufficient to meet Rule 26(a)(2)(A)'s expert disclosure requirement. "When a treating physician limits his testimony to his observation, diagnosis, and treatment, there is no need for a Rule 26(a)(2)(B) report. In contrast, when a treating physician opines as to causation, diagnosis, or future disability, the physician is going beyond ...his personal involvement...and giving an opinion formed because there is a lawsuit." *Griffith v. Northeast Illinois Regional Commuter Railroad Corp.*, 233 F.R.D. 513, 518 (N.D. Ill. 2006), citing *Muss v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir.2004) ("[E]ven treating physicians...must be designated as experts if they are to provide expert testimony."). Dr. Nath performed surgeries on Paige in 2002 and 2003. Thus, he is not a percipient witness to her birth. Any testimony offered outside of his observations while Paige was under his care would need to be in accordance with Rule 26. See *Thomas v. Consolidated Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996) ("a treating physician who has formulated opinions going beyond what was necessary to provide appropriate care for the injured party steps into the shoes of a retained expert for purpose of Rule 26(a)(2)."). Dr. Nath was never identified as a Rule 26(a)(2)(A) or (B) expert and did not prepare an expert report in accordance with Rule 26. In his deposition, Dr. Nath specifically states that he was not retained as an expert in this case by either side. (Deposition of Rahul K. Nath, 17:6) Accordingly, Dr. Nath cannot offer opinions on causation or

standard of care.  Without expert testimony of this essential element, Plaintiffs cannot meet its burden, and therefore cannot prevail on the instant motion for summary judgment. *Anderson*, 477 U.S. at 256-57.

## **CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiffs are unable to establish an essential element for any of their medical malpractice claims.  Accordingly, the Government's motion for summary judgment is GRANTED.  The clerk is directed to close this case and enter judgment in favor of defendant USA and against Plaintiffs.

IT IS SO ORDERED.

**Dated:   September 13, 2007**                          **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE